*409 OPINION OF THE COURT
Kenneth L. Gartner, J.
The defendant’s motion to suppress evidence in this criminal case requires this court to review an alleged conflict between a recent Kings County Supreme Court trial opinion, and an even more recent Appellate Term, Second Department, decision.
The defendant is charged with driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (2). The defendant was arrested on a snow-covered winter’s day, and was not administered standard field sobriety tests due to the absence of any appropriate surface for administering them. The defendant was, however, after being taken into custody, taken to the police department’s Central Testing Station at police headquarters in Mineóla, and there administered an Intoxilyzer 5000 test of his blood alcohol level. The test indicated a .19 blood alcohol content, more than double the legal limit.
The defendant moves to suppress, inter alia, the statements he gave, and the results of the Intoxilyzer 5000 test of his blood alcohol level, on the ground, inter alia, that the initial stop of his vehicle was unlawful and in violation of his constitutional rights. An evidentiary hearing was held.
The defendant was stopped for having an illegal window tint. It was then that the officer observed the classic indicia of intoxication (including bloodshot, glassy eyes, slurred speech, an odor of alcoholic beverage, unsteadiness on his feet, et al.). It was also then that the officer recognized the defendant as someone whom the officer had encountered earlier that morning when called to quell a landlord-tenant disturbance, at which time the officer had also formed the opinion that the defendant was intoxicated.
In arguing that his stop was unlawful, the defendant relies upon People v Tompkins (6 Misc 3d 30 [App Term, 2d Dept 2004]). In Tompkins (at 31), the Appellate Term sua sponte reversed the defendant’s conviction for an illegal tint violation, and dismissed the charges against him, holding:
“At trial, the officer testified that he estimated that the windows only permitted about 15% light transmittance. Although such a percentage of light transmittance is below the legal threshold, the officer did not establish that he possessed any experience in visually determining the amount of light transmitted through a window, or some other satis *410 factory reason or basis, such as a ‘tint-meter,’ for his opinion. As a result, the evidence was legally insufficient to establish the defendant’s guilt beyond a reasonable doubt. Although the defendant did not properly preserve his objection to the sufficiency of the evidence, we nevertheless review it in the exercise of our interest of justice jurisdiction” (citations omitted).
In the instant case, the officer conceded at hearing that he had received no special training in visually determining the amount of light transmitted through a window, and did not have a “tint meter” with him at the time of the stop. Since, argues the defendant, the defendant was therefore stopped for an alleged offense which the officer neither had a reasonable basis for contending had occurred, nor had the possibility of establishing “beyond a reasonable doubt” had occurred, under Tompkins the stop violated the defendant’s constitutional right to be safe from unreasonable search and seizure.
The courts have in the past regularly recognized stops for alleged window tint violations to. have been reasonable and appropriate. (See, e.g., People v Gomez, 24 AD3d 276 [2d Dept 2005] [car’s excessively tinted windows were among the factors establishing probable cause for believing the car was being utilized for illicit drug activity, and justifying its search]; People v Cuevas, 203 AD2d 88 [1st Dept 1994], lv denied 83 NY2d 909 [1994] [dark, apparently illegally tinted windows gave reasonable basis for police asking occupants of double-parked car to exit, leading to drug arrest]; People v Mota, 2003 NY Slip Op 50017[U], *3 [Sup Ct, Bronx County 2003, Clancy, J.] [police observation of an automobile with excessively tinted windows, a violation for which they later issued a summons, justified stop of car from which illegal weapon was recovered].) These cases did not, however, address the issue of whether the window tint violations allegedly supporting the stops were provable under the Tompkins standard.
In People v Andeliz (3 Misc 3d 384 [Sup Ct, Kings County 2004, McKay, J.]), the court denied a motion to suppress made on grounds similar to those raised by the instant defendant. The court there held (at 388):
“Based on all of the evidence ... I find it was sufficiently obvious to the police that the . . . windows in question excluded far more than 30% of the light, as allowed by Vehicle and Traffic Law § 375, even *411 though no tint meter was used and these officers were not expert in the fine points of the statute or its enforcement. This violation was enough to justify the stop of the vehicle.”
Although the Supreme Court decision in Andeliz was decided eight months prior to the Appellate Term decision in Tompkins, the decision is not, as defendant contends, contrary to Tompkins. Rather, the differing decisions reflect the different standards applicable in reviewing a verdict after trial for the sufficiency of evidence to convict beyond a reasonable doubt (as the Appellate Term was doing in Tompkins), and in reviewing the sufficiency of the evidence supporting probable cause for a stop (as was the case in Andeliz). The distinction was made clear by People v Osborne (158 AD2d 740 [3d Dept 1990], lv denied 75 NY2d 968 [1990]). In Osborne (at 741), the Court affirmed a finding of probable cause for the stop of a vehicle for an alleged window tint violation, quoting People v Ingle (36 NY2d 413, 420 [1975]), and Terry v Ohio (392 US 1, 21 [1968]), for the proposition that “[a]ll that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon ‘specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.’ ” (Accord, People v Edwards, 222 AD2d 603 [2d Dept 1995], lv denied 88 NY2d 984 [1996].)
In addition, Andeliz (like the instant case), is factually distinguishable from Tompkins.
In Tompkins, the officer was prohibited from proving the People’s case at trial via a nonexpert estimation of the percentage of light allowed by the window, something that would have required the officer to make a somewhat esoteric judgment. In Andeliz (as in the instant case), the People were permitted to adduce evidence at the hearing that the violation was “sufficiently obvious” that no special expertise was required, something which commonsense observation can provide.
In fact, Tompkins (at 31) specifically noted that even at trial, an “other satisfactory reason or basis” for establishing a violation, besides proven expertise or a tint meter, could exist, but would simply have to be established. Such was the case in Andeliz, and such is the case here.
The officer in the instant case testified that to his knowledge “the windows on a police car are the legal tint allowable by law.” He was able to discern without the necessity of any special training or equipment that the defendant’s windows were *412 darker than those on his own vehicle. No fine distinctions such as those which were apparently at issue in Tompkins were presented. Rather, the credible testimony in the instant hearing was that the violation was, as in Andeliz, “obvious,” thus justifying the stop of the vehicle: “[The defendant’s] tint was so dark I could not see inside the vehicle .... I could not see into his window. That window was black. I know that’s illegal.”
In Osborne (supra, 158 AD2d at 741), the police officer had testified that he knew that “if you can’t see through the window,” then it constitutes a violation, and that in the case then at bar, “while he could see there was a driver of the car, he could not identify who it was.” Thus, the Appellate Division in Osborne determined that the officer’s “observation of the tinted windows and his inability to identify the driver were a proper predicate for the stop” (158 AD2d at 742). The same is true in the instant case.
The other grounds raised by the defendant have been considered and rejected. The defendant’s motion is denied.